DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment awarding appellee Athens County Children Services (ACCS) permanent custody of: (1) Christina Decker, born August 12, 1984; (2) Steven Decker, born June 2, 1986; (3) Jessica Cozad, born November 9, 1988; (4) Jennifer Ginnery, born March 2, 1992; and (5) Tiffany Ginnery, born December 6, 1992.
Appellant Jeff Ginnery (appellant), the natural father of Jennifer and Tiffany, assigns the following errors:
 FIRST ASSIGNMENT OF ERROR: "PARENTS NEED NOT ACHIEVE 100% PERFECTION IN COMPLIANCE WITH CHILDREN SERVICES' CASE PLAN TO BE REUNITED WITH THEIR CHILDREN: INSUFFICIENT CLEAR AND CONVINCING EVIDENCE WAS SUBMITTED TO PROVE THAT THE PARENTS FAILED CONTINUOUSLY AND REPEATEDLY TO SUBSTANTIALLY REMEDY THE CONDITIONS CAUSING THE CHILDREN TO BE REMOVED FROM THE HOME."
 SECOND ASSIGNMENT OF ERROR: "IF NEW REQUIREMENTS ARE ADDED TO A CASE PLAN FOR REUNIFICATION, TO ADDRESS A CONCERN WHICH WASN'T ONE OF THE REASONS FOR THE INITIAL REMOVAL, THE PARENTS MUST BE GIVEN AN ADEQUATE OPPORTUNITY TO COMPLY."
Prior to the children's removal from the home, Amanda Decker, Christina, Steven, Jessica, Jennifer, and Tiffany lived with appellant and his companion, Linda Harden.[1] Amanda, Christina and Steven are the biological children of Linda Harden and John Decker. Decker has had no significant involvement in his children's lives.[2] Jessica is the biological child of Linda Harden and Dwight Cozad. Cozad has exercised visitation rights with Jessica.[3] Jennifer and Tiffany are the biological children of appellant and Linda Harden.
On April 14, 1998, ACCS filed complaints alleging Christina, Steven, Jessica, Jennifer, and Tiffany to be abused, neglected, and dependent children.[4] In the complaint, ACCS alleged that: (1) it had been providing case management services to the family since December 20, 1996, and has had multiple involvements with the family; (2) it had been granted protective supervision over a sibling, Amanda Decker, after a neglect adjudication; (3) the court had ordered appellant not to have overnight visits at the family home and not to consume alcohol prior to visiting; and (4) appellant had violated that court order. The complaint further alleged that Christina told an ACCS caseworker that: (1) appellant "sexually molested her, threatened her, and physically assaulted Christina Decker's friend"; (2) appellant told Christina "I'm going to put your head through the wall"; and (3) appellant called Christina and her friend "pussies," "jail bait," and "chicken bitches" because they would not have sex with him. The complaint also alleged that numerous prior incidents of domestic violence have occurred within the home and that Linda Harden has failed to protect her children from appellant's violence and abusive behavior.
On April 14, 1998, the trial court granted ACCS emergency custody of the children. On June 16, 1998, and continuing on June 23, 1998, the trial court held an adjudicatory hearing. On October 23, 1998, the trial court found the children to be dependent and ordered the children to remain in ACCS's temporary custody. The court found the children to be dependent, in part, because Linda Harden has failed to protect her children from "an environment that is continually stressful and potentially dangerous." The court found that appellant's problem with alcohol consumption, his violent behavior, and his inappropriate sexual conduct toward the children contribute to the stressful environment and that Linda Harden has failed to take any steps to protect the children from appellant's behaviors. The court thus concluded: "Because of the chronic history of drinking and domestic violence in this family and [Linda's] inadequate response, [the children] are at risk of further harm, and it is in their best interest that the Court find them to be dependent." On November 16, 1998, the court held a dispositional hearing. At the hearing the parties agreed that the children would remain in ACCS's temporary custody.
On December 29, 1999, ACCS filed a motion for permanent custody. ACCS requested permanent custody because: (1) the children had been within its custody for at least twelve months of a twenty-two month period; and (2) the parents[5] had not remedied the problems that caused the children's removal. ACCS alleged that the parents have failed to resolve the substance abuse and domestic violence issues and that the parents have not maintained housing that would be suitable for the children. ACCS further asserted that the parents have failed to demonstrate any serious commitment to the children's well-being. ACCS claimed that awarding it permanent custody would serve the children's best interests.
On March 13, 14, and 15, 2000, the trial court held a hearing regarding ACCS's motion for permanent custody. At the hearing, the children's foster parents testified that when the children initially were removed from the home: (1) the children's clothes were dirty; (2) some of the children had head lice; (3) some of the children were underweight; (4) some of the children were withdrawn; and (5) Steven could not read. The foster parents further stated that after the children were removed from the home, the children demonstrated a marked improvement. The foster parents noted that the children were performing well academically and that the children had become healthier, happier, and more out-going.
Jennifer Radcliffe, the Tri-County Mental Health and Counseling counselor for Steven, Jessica, and Christina, testified that Christina has stated adamantly that she does not wish to return home and that she would not feel safe at home. Radcliffe further stated that Christina told her she fears for her siblings' safety if they were to return home.
ACCS caseworker Liesl Gyurko testified that ACCS provided Linda and appellant with, inter alia, case management services, visitation, transportation, financial assistance, and counseling referrals. Gyurko related that the services were not successful in reunifying the family. Gyurko stated that she believed that the children's best interests would be served by granting ACCS permanent custody. We further note that: (1) the guardian ad litem recommended that ACCS be awarded permanent custody of the children; and (2) two of Linda's relatives, her sister and a cousin, testified that they did not believe the children's best interests would be served by returning the children to appellant's home. The relatives explained that Linda and appellant did not lead a lifestyle conducive to raising healthy children.
On March 14, 2000, the trial court conducted separate in camera
interviews of the children. During Steven's interview, Steven stated that he loves appellant and Linda Harden very much and that he would like to return home. Steven advised the court that he believed Tiffany, Jennifer, and Jessica want to go home. Steven stated that appellant drank alcohol to excess and that he had a temper every time he drank. Steven stated that on one occasion "[appellant] kicked Amanda in the rib cage."
Jessica stated that she wants to live with her aunt, Juanita Jack. She stated that she is afraid to return home because she is afraid that the fighting between appellant and Linda Harden will continue. Jessica explained to the court that on one occasion, appellant threw the television out the window. She stated it would not bother her if she never saw appellant again. Jennifer and Tiffany stated that they want to live with "Aunt Terri" (not an aunt, but their mother's cousin). Jennifer stated that she is afraid to return home because she is afraid her parents will continue fighting. She stated that when appellant drinks alcohol, he "beats up" Linda Harden.
Christina stated that she wants to stay with her foster parents because they are not violent like appellant and because she feels safe with them. She stated that she has seen her mother and appellant use drugs before.
Christina's foster family expressed an interest in adopting her. Linda's cousin expressed an interest in adopting Tiffany and Jennifer. Linda's sister expressed an interest in adopting Jessica.
On July 12, 2000, the trial court awarded ACCS permanent custody of the five children. The trial court noted that the children had been in ACCS's temporary custody for over twelve months of the prior twenty-two months. See R.C. 2151.414(B)(1)(d). The court also determined that awarding ACCS permanent custody would serve the children's best interests. In awarding ACCS permanent custody, the court noted as follows:
 "Since the removal of the children, [appellant] and Linda Harden have made little or no effort to address the problems which would make it safe for the children to return home. [Appellant], after the Court determined that substance abuse was a basis for the adjudication, has entered and failed to comply with court ordered substance abuse counseling on two occasions. He has consistently failed to obey the orders of this court. He has continuously used either alcohol or marijuana and failed to follow the recommendations of his counselors. He has continuously failed to attended schedule[d] sessions until he was eventually terminated from both programs. He even admitted using marijuana shortly before the permanent custody hearing. He admitted he would fail a drug screen the day he testified. He has shown little interest in his children by not attending group meetings, not attending any of his childrens' [sic] school functions, or paying any child support in almost two years.
 A basis of the original adjudication was Linda Harden's failure to protect her children. She has remained with [appellant] even though he has willfully failed to complete court ordered counseling. Instead of insisting on a drug and alcohol free home for her children, Linda Harden began again smoking marijuana nine months ago and admitted using one week before the permanent custody hearing. She was convicted of possession of marijuana and even was seen smoking marijuana at a funeral. Christmas in-home visitation was canceled when both Linda Harden and [appellant] failed drug tests. Both parents have used marijuana against the recommendation of their substance abuse counselors and while in substance abuse programs. Linda Harden has not paid any child support since the children were in foster care."
The court further noted that: (1) at a review hearing on October 13, 1999, it ordered in-home visitation between the children and the parents if appellant attended counseling. Because appellant missed the counseling sessions, however, the in-home visits did not occur. The court had also ordered an extended Christmas visitation between the parents and the children if appellant and Linda Harden passed a drug/alcohol screening. Because the parents failed the drug/alcohol screening, however, the visitation did not occur.
After reviewing the evidence adduced at the hearing, the trial court concluded that awarding ACCS permanent custody of the children would serve their best interests. The trial court reasoned that: (1) the children have thrived while in ACCS's temporary custody; (2) the evidence suggests that they will continue to thrive if placed in ACCS's permanent custody; and (3) the parents appear unable or unwilling to provide the children with a safe, stable environment in which the children can thrive. Appellant filed a timely notice of appeal.
In his two assignments of error, appellant argues, in essence, that the weight of the evidence does not support the trial court's decision to award ACCS permanent custody of the children. Appellant asserts that no clear and convincing evidence exists to show that the children cannot or should not be placed with either parent within a reasonable time. See R.C. 2151.414(B)(1)(a). Specifically, appellant contends that no evidence of a repeated and continuous failure to substantially remedy the conditions causing the children's removal exists. See R.C. 2151.414(E)(1).
Appellant further contends that the trial court improperly based its determination to award ACCS permanent custody upon the parents' marijuana usage. Appellee notes that the marijuana issue had not been one of the initial reasons causing the children's removal.
Appellee contends that competent, credible evidence supports the trial court's decision to award ACCS permanent custody of the children. Appellee notes that because the children have been in ACCS's custody for at least twelve of the past twenty-two months, appellant's argument that the trial court was first required to find a failure to substantially remedy the conditions causing the children's removal is without merit. Appellee asserts that pursuant to the current version of R.C.2151.414(B)(1)(d), a trial court need not consider whether the conditions have been remedied, if the child has been in emergency custody for twelve of the past twenty-two months.
A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982), 455 U.S. 745,753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169, 1171. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'"In re Cunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034, 1038
(quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the child's best interests may warrant the state in terminating parental rights. See id.
R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C.2151.413, the trial court must follow the guidelines set forth in R.C.2151.414.
R.C. 2151.414(A)(1) requires the trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the trial court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C.2151.414(A)(1).
The decision that the child is an abused, neglected, or dependent child may not be re-adjudicated at the hearing. See id. Once a child is adjudicated dependent as defined in R.C. 2151.04, the best interests of the child become the trial court's primary concern when determining whether permanent custody is justified. Cunningham, supra.
Moreover, when reviewing a motion for permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
 (A) To provide for the care, protection, and mental and physical development of children * * *;
* * *
 (C) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
We note that clear and convincing evidence must exist to support an award of permanent custody. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
 "[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23,26; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54, 60. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel,55 Ohio St.3d at 74, 564 N.E.2d at 60. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id.. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained inSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
R.C. 2151.414(B) permits a trial court to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See Inre Fox (Sept. 27, 2000), Wayne App. Nos. 00 CA 38, 00 CA 39, 00 CA 40, 00 CA 41, unreported;[6] In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 63, unreported; In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 62, unreported.[7] See, generally, In re Lusk (Nov. 27, 2000), Butler App. No. CA2000-07-139, unreported; In re Barker (June 16, 2000), Champaign App. No. 20001, unreported; In re Rodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported.
Thus, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the best interests of the child. A trial court need not conduct an R.C.2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time.
R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
In the case at bar, we find ample competent, credible evidence to support the trial court's decision to award ACCS permanent custody of appellant's children. The evidence reveals that the children have been in ACCS's temporary custody for at least twelve of the prior twenty-two months. See R.C. 2151.414(B)(1)(d). The children initially were removed from the home on April 14, 1998, and the trial court adjudicated the children dependent on October 23, 1998. For purposes of R.C.2151.414(B)(1)(d), a child is considered to enter "the temporary custody of an agency on the earlier of the date the child is adjudicated [dependent] * * * or the date that is sixty days after the removal of the child from the home." R.C. 2151.414(B)(1). Thus, at the time ACCS filed its motion for permanent custody, the children had been in its temporary custody, for purposes of R.C. 2151.414(B)(1)(d), for at least fourteen months. Because the children had been in ACCS's temporary custody for at least twelve months of a twenty-two month period, the trial court's award of permanent custody is justified upon a finding that permanent custody would serve the children's best interests.
In the case sub judice, substantial competent and credible evidence exists to support the view that the children's best interests would be served by awarding ACCS permanent custody. See R.C. 2151.414(D). With respect to the first factor under R.C. 2151.414(D), the children's interaction and interrelationship with their parents, siblings, and foster care providers, the evidence demonstrates that while the children express love for their parents, the children also express fear of returning home. The children have stated that they continue to fear witnessing or experiencing appellant's violent outbursts. The evidence illustrates that all of the children: (1) appear to like their foster parents; (2) have thrived during their stays in foster care; and (3) will continue to thrive if provided with a stable and nurturing home.
The record also reveals the following with respect to the second factor, the children's wishes as expressed directly by the child or through the guardian ad litem. All of the children, except Steven, stated that they fear returning home. Jennifer and Tiffany stated that they would not mind living with Aunt Terri. We note that the guardian adlitem recommended that ACCS be awarded permanent custody of the children.
Regarding the third factor, the custodial history of the children, at the time of the hearing the children had been in ACCS's temporary custody for almost two years.
With respect to the fourth factor, the children's need for a legally secure placement, we agree with the trial court that the children deserve a stable, nurturing environment. The evidence demonstrates that appellant is unable or unwilling to provide a stable and nurturing environment for his children.
In light of the foregoing, we conclude that the trial court properly determined that the children's best interests would be served by awarding ACCS permanent custody. We again note that because R.C. 2151.414(B)(1)(d) permits a trial court to award a children services agency permanent custody upon finding that the child has been in temporary custody for at least twelve of the prior twenty-two months and that permanent custody would serve the child's best interest, a trial court need not render any finding relating to whether the child cannot or should not be placed with either parent (or whether the parent has substantially remedied the conditions causing the child's removal, see R.C. 2151.414(E)(1)). Therefore, appellant's arguments relating to whether the evidence does or does not support a finding that he has substantially remedied the conditions causing the children's removal, including his arguments relating to his marijuana usage, have limited value with respect to the trial court's decision to award ACCS permanent custody. See, e.g.,Moody, supra. Pursuant to R.C. 2151.41(B)(1)(d), the parent's conduct is irrelevant. The child's best interests control.
Furthermore, appellant's argument that ACCS's alleged failure to implement certain aspects of the case plan is without merit. R.C.2151.414(C) specifically states that "[t]he court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan."
Finally, although certain evidence relating to the children's condition and environment concerned what had occurred in the past, as we stated inIn re Burchfield (1988), 51 Ohio App.3d 148, 156-57, 555 N.E.2d 325,333:
 "`[T]he child does not first have to be put into a particular environment before a court can determine that [the] environment is unhealthy or unsafe. * * * The unfitness of a parent, guardian or custodian can be predicted by past history.'"
(quoting In re Bishop (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838,841) (citations omitted). Furthermore, courts have recognized that:
 "`* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"
Bishop, 36 Ohio App.3d at 126, 521 N.E.2d at 841-42 (quoting In reEast (1972), 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346).
Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J.: Concurs in Judgment Opinion
Evans, J.: Not Participating
 ___________________________ Peter B. Abele, Presiding Judge
[1] Appellant and Linda Harden alleged that they had been living together as man and wife since November of 1990, prior to the abolition of common law marriage.
[2] Decker did not participate in the proceedings below. The trial court noted that the record revealed that Decker had received proper notice and service of the proceedings, but that Decker had not appeared. Decker is not involved in the instant appeal.
[3] Cozad has not appealed the trial court's judgment awarding ACCS permanent custody.
[4] By agreement of the parties, legal custody of Amanda was granted to Amanda's maternal grandmother. The parties have filed no appeal regarding the custody of Amanda.
[5] Unless otherwise noted, "parents" refers to appellant and Linda Harden.
[6] In Fox, the court discussed R.C. 2151.414(B)(1)(d) as follows:
 "This proceeding for permanent custody was brought on April 12, 1999, pursuant to R.C. 2151.413 and R.C. 2151.414, as amended and effective March 18, 1999. Pursuant to the statutes in effect at the time of the motion and hearing, the juvenile court may grant permanent custody to the agency upon two findings: (1) that it is in the best interest of the child, R.C. 2151.414(B)(1); and (2) that the child had been in the temporary custody of an appropriate agency as a neglected child `for twelve or more months of a consecutive twenty-two month period ending on or after [March 18, 1999.]' R.C. 2151.414(B)(1)(d). The juvenile court is required to make an additional finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent only where the child has not been abandoned, orphaned or has not been in temporary custody for twelve or more months of a consecutive twenty-two month period. See R.C. 2151.414(B)(1). This means that the juvenile court was not required to make a finding pursuant to R.C. 2151.414(E) as Appellant contends."
(Emphasis added.)
[7] In Moody, we noted as follows:
 "On March 18, 1999, Am.Sub.H.B. No. 484 ("HB 484") became effective and amended R.C. 2151.414. Prior to this amendment, a trial court could grant permanent custody of a child who had not been abandoned or orphaned only if doing so was in the best interest of the child and the trial court found that the child could not be placed with the parent within a reasonable time or should not be placed with the parent. After HB 484's amendments, a trial court may grant permanent custody of a child who has not been abandoned or orphaned to an agency if doing so is in the best interest of the child and the child has been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. See R.C. 2151.414(B)(1)(d). If the child has not been in the agency's custody for the requisite period of time (and has not been abandoned or orphaned), the trial court may grant permanent custody to the agency only if the child could not be placed with the parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). Thus, the trial court is required to determine whether the child could not be placed with the parent within a reasonable time or should not be placed with the parent only if the child is not abandoned, orphaned, or has not been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. R.C. 2151.414(B)(1); R.C. 2151.414(B)(2)."